UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY S. SALAZAR,

       Plaintiff,

v.                                                 Case No. 1:06-CV-552
                                                 Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                    /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on September 15, 1970 and attended school through the 10th grade (AR 86, 132).[1] Plaintiff alleged that she had been disabled since October 16, 2002 (AR 86). She had previous employment as a clerk, factory worker, nursing home resident assistant, housekeeper, teacher's assistant and teacher's aid (AR 138-44). Plaintiff identified her disabling conditions as a painful foot problem ("like a bone is rubbing with another bone") and flat feet (plantar fasciitis) (AR 126).

Plaintiff filed applications for DIB and SSI in March 1997, which were denied initially in November 1997 and in an administrative hearing decision dated August 14, 1998 (AR 12). Plaintiff filed her current applications for DIB and SSI on January 15, 2003 (AR 12). The SSI

---

[1] Citations to the administrative record will be referenced as (AR "page #").

claim was technically denied on February 7, 2003, and not pursued (AR 12). The DIB claim was denied initially on May 7, 2003 and by an administrative law judge (ALJ) in a decision dated October 25, 2004 (AR 12, 28-35). The Appeals Council, however, vacated the decision and remanded the case for a new administrative hearing (AR 37-39). In its order of remand, the Appeals Council directed the ALJ: to obtain additional evidence concerning plaintiff's affective disorder and musculoskeletal conditions; to further valuate plaintiff's subjective complaints in accordance with 20 CFR § 404.1529; further evaluate plaintiff's mental impairments; if necessary, to obtain evidence from a medical expert to clarify the nature and severity of plaintiff's mental impairments; if warranted, to obtain supplemental evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on plaintiff's occupational base; to offer plaintiff an opportunity for a hearing; and, to take any further action needed to complete the administrative record and issue a new decision (AR 38-39).

On remand, the ALJ obtained evidence from a medical expert (Dennis L. Mulder, Ed. D.) to evaluate plaintiff's mental impairments, held a supplemental hearing, obtained additional evidence from a VE, reviewed plaintiff's claims *de novo* and entered a decision denying her claims on December 15, 2005 (AR12-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."

> Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (AR 21). The ALJ found that plaintiff was insured for DIB through September 30, 2004 (AR 21). Second, the ALJ found that plaintiff had severe impairments of "plantar fasciitis; multiple disc bulges with minimal stenosis of the lumbar spine; major depressive disorder, NOS, recurrent, moderate; anxiety disorder; and historical personality disorder" (AR 22). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or

equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "for a narrowed range of sedentary exertion":

> She could lift and/or carry 10 pounds occasionally and 5 pounds frequently; could stand and/or walk for 2 hours in an 8-hour workday; could occasionally stoop, kneel, crouch, crawl and climb stairs and ramps; would be restricted from climbing ladders, ropes and scaffolds; and could not engage in jobs requiring the use of foot controls. She could understand, remember and carry out short, simple instructions and should have no frequent or sustained interaction with co-workers and the general public. The claimant has moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation.

(AR 22). The ALJ found that plaintiff could not perform her past relevant work (AR 22). The ALJ also found that plaintiff's statements regarding her impairments and their impact on her ability to work were not entirely credible (AR 22).

At the fifth step, the ALJ found that plaintiff could perform a significant range of sedentary work in the national economy, including office helper (5,000 jobs) and production worker (4,000 jobs) (AR 21-22). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act on or prior to September 30, 2004 and entered the decision denying benefits (AR 22-23).

**III. ANALYSIS**

In this district, plaintiffs in Social Security appeals are required to provide a statement of errors, so that the court can address the specific matters at issue between the parties. Plaintiff's counsel did not comply with the requirements of the court's order directing filing of briefs, which directed him to enumerate specific issues on appeal to this court:

> Plaintiff's initial brief must contain a Statement of Errors, identifying and numbering each specific error of fact or law upon which plaintiff seeks reversal or remand.

*See* docket no. 9. Because plaintiff failed to enumerate the claims as directed, the court must frame the issues for review. It appears to the court that this appeal is limited to five issues arising from the ALJ's evaluation of plaintiff's mental impairments. Accordingly, the court will address the following arguments:

      A.      Appeals Council denial of plaintiff's request for review.

      B.      New medical evidence not presented to the ALJ.

      C.      The ALJ failed to properly apply the new "medical source" evaluation rule SSR 06-03p.

      D.      The ALJ gave too much weight to the opinion of a one-time examining psychologist, Dr. Mulder.

      E.      The ALJ ignored certain responses to hypothetical questions posed to the vocational expert (VE).

While plaintiff may have raised other other cryptic or passing arguments in her brief, the court deems these other arguments as waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones").

      **A.      Appeals Council denial of plaintiff's request for review.**

First, plaintiff apparently seeks a review of the Appeals Council's action. *See* Plaintiff's Brief at 1. Such review is not appropriate in this court. "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)." *Willis v. Secretary of Health and Human Servs.*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), *citing Califano v.*

*Saunders*, 430 U.S. 99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### B. New medical evidence not presented to the ALJ.

Next, plaintiff relies on evidence that she submitted to the Appeals Council but was not submitted to the ALJ (AR 5-8, 336-51). "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). *See also Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[2] Sentence six provides that"[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

---

[2] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

Here, plaintiff did not explicitly request a sentence-six remand, nor did she provide the court with any authority to support such a remand. Furthermore, even if plaintiff had requested such a remand, she has not shown good cause for failing to present this evidence to the ALJ. "Good cause" is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986).

To prevail on her remaining claim for DIB, plaintiff must demonstrate that she was disabled on or before her last insured date of September 30, 2004. All of the documents submitted by plaintiff were generated after the ALJ's decision denying benefits on December 15, 2005, long after plaintiff's last insured date. The additional documents, which include an affidavit by plaintiff, a mental RFC assessment and opinion letter from psychiatrist Alberto Gutierrez, M.D., a physical RFC assessment from Glenn Hoort, D.P.M., and an update from social worker Jude Vereyken, were submitted to the Appeals Council as exhibits to a letter contesting the ALJ's decision (AR 327-51). These documents fail to meet the good cause requirement, because they did not arise in the course of continued medical treatment, but were generated for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2. In addition, the good cause requirement is not met by the solicitation of medical opinions to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process).

Accordingly, plaintiff is not entitled to a sentence-six remand for further consideration of these documents.

### C. The ALJ failed to properly apply the new "medical source" evaluation rule SSR 06-03p.

Next, plaintiff contends that the ALJ should have retroactively applied the procedure outlined in SSR 06-03p. Specifically, plaintiff contends the ALJ should have given greater weight to the opinions expressed by plaintiff's "therapist-mental health treater J. Vereyken, who is (as the ALJ pointed out), a social worker, not a true doctor, and thus not a medical source under 20 CFR [§] 404.1513." Plaintiff's Brief at 3.

By way of background, the regulations provide that the Commissioner needs evidence from "acceptable medical sources" to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a). "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists (for vision disorders), licensed podiatrists (for impairments of the foot or ankle), and qualified speech-language pathologists (for speech or language impairments). *Id.* Under the regulations, "medical opinions" are statements from physicians, psychologists or other acceptable medical sources, which reflect judgments about the nature and severity of a claimant's impairment, including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,

9

[the Commissioner] will give it controlling weight." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997), *quoting* 20 C.F.R. § 404.1527(d)(2).

Under the regulations, health care providers not listed in § 404.1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists, are considered to be "other" medical sources, rather than "acceptable medical sources." *See* 20 C.F.R. § 404.1513(d)(1). Because a therapist is not an "acceptable medical source" under the regulations, Jude Vereyken's opinions are not entitled to controlling weight. *Hardin v. Barnhart*, 468 F.Supp.2d 238, 250 (D. Mass. 2006); *Castillo-Borrero v. Barnhart*, No. Civ. A 02-588, 2004 WL 2203744 at *7 (E.D. Pa. Sept. 27, 2004). As the Sixth Circuit explained in *Walters*, in the context of a chiropractor who was an "other medical source" whose opinions were not entitled to controlling weight:

> [L]ogic and the plain language of the regulations suggest that a treating source under 20 C.F.R. § 404.1527(d)(2) must be a medical source and that a chiropractor is not a medical source. The controlling weight provision is found under a section heading that refers specifically to medical opinions, and in the regulations chiropractor opinions are not listed as one of the five types of "acceptable medical sources" but are instead listed under the separate heading of "other [non-medical] sources." Compare 20 C.F.R. § 404.1513(a) (1997) with 20 C.F.R. § 404.1513(e) (1997). We, therefore, must agree with the Second Circuit's conclusion that under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all evidence in the record since a chiropractor is not a medical source.

*Walters*, 127 F.3d at 530.

Last year, the Commissioner adopted Social Security Ruling (SSR) 06-03p, which, in some respects, blurs the regulation's bright line distinction between "acceptable medical sources" and other health care providers, i.e., "other" sources. *See* SSR 06-03p (effective Aug. 9, 2006), text at www.ssa.gov. This policy interpretation ruling acknowledges that with the growth of managed

10

health care in recent years, other health care providers (such as nurse practitioners and therapists) have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists. *Id.* While SSR 06-03p reiterates that "[i]nformation provided from these 'other sources' cannot establish the existence of a medically determinable impairment," the ruling states that "[h]owever, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* The ruling also states that opinions from these other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.*

In this ruling, the Commissioner has taken the position that an opinion from a medical source that is not an "acceptable medical source" may be given greater weight than an opinion from an "acceptable medical source." This interpretation does not appear entirely consistent with the Commissioner's previously expressed view that the opinions of an "acceptable medical source" should be given greater weight than other sources:

> Opinions From Medical Sources Who Are Not "Acceptable Medical Sources"
>
> Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.
>
> Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955 , dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."

*Id.*

SSR 06-03p also allows the Commissioner to conclude that opinions from from "non-medical sources" may be given greater weight than opinions expressed by medical sources:

> Evidence From "Non-Medical Sources"
>
> Opinions from "non-medical sources" who have seen the individual in their professional capacity should be evaluated by using the applicable factors listed above in the section "Factors for Weighing Opinion Evidence." Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a "non-medical source" who has seen the individual in his or her professional capacity depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.
>
> For opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

>An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. For example, this could occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time and if the "non-medical source's" opinion has better supporting evidence and is more consistent with the evidence as a whole.
>
>In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

*Id.*

Plaintiff contends that SSR 06-03p should be applied retroactively to her case, and that the ALJ should give greater weight to the opinions expressed by her social worker and therapist. The court disagrees. Plaintiff relies on the decision in *Combs v. Commissioner of Social Security*, 459 F.3d 640 (6th Cir. 2006) (*en banc*) as authority for the retroactive application of this policy interpretation ruling. In *Combs*, the issue before the court was whether the agency impermissibly adjudicated the claimant's application for disability benefits under criteria that changed while her case was pending before the agency, i.e., an change in the regulations that eliminated the listed impairment of obesity. *Combs*, 459 F.3d 640. *See also Bellsouth Telecommunications, Inc. v. Southeast Telephone*, 462 F.3d 650, 663 (6th Cir. 2006) (discussing relevance of *Combs* decision). A majority of the court (in a plurality opinion and an opinion concurring in the judgment) held that the agency's refusal to adjudicate the claimant's pending application under the old regulation, which included a listed impairment of obesity, did not have an impermissible retroactive effect. *Id.*

Here, plaintiff's case is distinguishable from *Combs*, because unlike the claimant in *Combs*, plaintiff's claim was not pending before the agency. Rather, SSR 06-03p went into effect

13

on August 9, 2006, more than two months after the Appeals Council denied plaintiff's request for review on June 2, 2006 (AR 5-8). Accordingly, plaintiff has no basis to claim that SSR 06-03p applies retroactively to her case.[3]

### D.     The ALJ gave too much weight to the opinion of a one-time examining psychologist, Dr. Mulder.

Next, petitioner contends that the ALJ improperly relied on the opinion of Dr. Mulder, who examined plaintiff pursuant to the remand instructions from the Appeals Council (AR 253-63). As previously discussed, the Appeals Council contemplated that the ALJ would "obtain evidence from a medical expert to clarify the nature and severity of plaintiff's mental impairments" (AR 38-39). The ALJ complied with the Appeals Council's order and, on remand, obtained Dr. Mulder's opinion regarding the nature and severity of plaintiff's mental impairments. Dr. Mulder examined plaintiff on July 20, 2005 (AR 253-59). As part of his examination, Dr. Mulder took plaintiff's medical history, performed a Minnesota Multiphasic Personality Inventory, and reviewed

---

[3] The court notes that plaintiff's case is further distinguishable from *Combs* because plaintiff seeks to have the court retroactive apply an agency policy interpretation ruling (SSR) rather than an agency regulation. An SSR does not have the force and effect of a regulation. "Rulings [SSRs] do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings." *Heckler v. Edwards*, 465 U.S. 870, 873 n. 4 (1984). As one court explained:

> SSRs are interpretive rules intended to offer guidance to agency adjudicators. *Lauer v. Bowen*, 818 F.2d 636, 639-40 (7th Cir.1987). "While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs 'binding on all components of the Social Security Administration.'" *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir.1999) (citing 20 C.F.R. § 402.35(b)(1)).

*Nelson v. Barnhart*, No. 06-C-249-C, 2006 WL 3042954 at *5 (W.D.Wis. Oct. 24, 2006). *See also, Nicely v. McBrayer, McGinnis, Leslie & Kirkland*, 163 F.3d 376, 385 (6th Cir. 1998) (while SSRs do not have the force and effect of the law or regulations, "they do indicate what the Administration considers when making its determination"). However, because SSR 06-03p is inapplicable for other reasons, it is unnecessary for the court to further discuss this distinguishing feature.

14

plaintiff's medical records (AR 253-59). Dr. Mulder found that plaintiff had few limitations in her ability to understand, remember and carry out instructions and to respond appropriately to supervision, co-workers and work pressures (AR 261-62). In this regard, plaintiff had only slight restrictions in her ability to understand, remember and carry out detailed instructions, and in her ability to make judgments on simple work-related decisions (AR 261). In addition, plaintiff had a moderate restriction in her ability to respond appropriately to work pressures in a usual work setting (AR 262). The ALJ chose to give greater weight to Dr. Mulder's report, "a senior psychologist, who reviewed the medical evidence of record and saw the claimant at the request of the Administration following remand by the Appeals Council" (AR 19, 253-63).

The ALJ gave little weight to the conclusions of Roy P. Welton (a limited licensed psychologist) and Dominic Amante, Ph. D. (a fully licensed psychologist), which arose from a psychological evaluation preformed on January 27, 2004 (AR 15, 19). The Welton/Amante report concluded that plaintiff had a fair to poor ability to adjust to a job, rating her ability to "deal with work stresses" and "maintain attention/concentration" as "poor" to "none" (AR 227). They found that she had only a "fair" ability to understand, remember and carry out simple job instructions (AR 228). She also had a fair to poor ability to adjust personally and socially, rating her ability to "behave in an emotionally stable manner" and "demonstrate reliability" as between 'poor" and "none" (AR 228). The ALJ also gave little weight to the report of Jude Vereyken (a social worker) and Randall Johnson, M.A. (a limited licensed psychologist), which reached conclusions similar to the Welton/Amante report (AR 16, 19, 199-200).

The ALJ discounted the Welton/Amante report because it was based upon a single examination and was inconsistent with the other medical evidence of record (AR 19). In addition,

15

the ALJ discounted the Vereyken/Johnson report because Mr. Vereyken was not a medical source under 20 CFR § 404.1513, and because "[t]he notes from the treating sources do not support a conclusion of disability based on mental impairments in spite of [plaintiff's] dysfunctional childhood and current family stress and discord" (AR 19).

Plaintiff contends that the ALJ improperly evaluated her condition by adopting Dr. Mulder's opinion, which was based upon a single evaluation, rather than the more severe limitations of "multiple treaters" and "other examiners." Plaintiff's Brief at 3. Plaintiff does not identify the "multiple treaters" that expressed contrary opinions. As the ALJ pointed out, the Welton/Amante report was based upon a single examination, and Mr. Vereyken was not a medical treater. Faced with a difficult medical record, the ALJ chose to follow the Appeals Council's instructions and to obtain an evaluation by a medical expert. *See, generally, Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996) "[a]n ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination").

After Dr. Mulder's evaluation, the ALJ was faced with three different opinions regarding plaintiff's mental limitations. Here, the ALJ resolved the conflicting medical evidence by adopting Dr. Mulder's opinion. "[I]t is well within the province of the ALJ/Commissioner to conclude that the medical evidence is more consistent with the reports of one physician." *Wooten v. Apfel*, 108 F. Supp.2d 921, 927 (E.D. Tenn. 2000). The ALJ has the discretion to weigh the medical evidence and to resolve conflicts in that evidence. *See Bradley v. Secretary of Housing and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988); *King v. Heckler*, 742 F.2d 968, 74 (6th Cir. 1984). Furthermore, the ALJ was not required to give a detailed explanation for giving less weight to the other reports. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 875-76 (6th Cir.

16

2007) (the requirement that an ALJ must give "good reasons" for the weight accorded to a medical opinion applies only to *treating* sources) (emphasis in original). Based on this record, the court will not upset the ALJ decision to adopt Dr. Mulder's opinion.

> **E. The ALJ ignored certain responses to hypothetical questions posed to the VE.**

Finally, plaintiff contends that the ALJ ignored certain testimony from the VE which supported her disability claim. Specifically, the VE's testimony that the limitations expressed in the Welton/Amante and Vereyken/Johnson reports, *see* discussion, *supra*, would preclude plaintiff from performing work on a sustained, full-time basis (AR 409-10). The ALJ chose to adopt the VE's testimony based upon limitations consistent with Dr. Mulder's report, i.e., that such a person

> Would be restricted from frequent or sustained interaction with co-workers or the public, and probably minimal public contact. And would be limited to understanding, remembering and carrying out only short simple instructions.

(AR 408-09). Given these restrictions, the VE testified that such an individual could perform 4,000 jobs as an office helper and 5,000 jobs as a production worker (AR 408-09).

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of*

*Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

As previously discussed, the ALJ adopted the restrictions as set forth in Dr. Mulder's report. Accordingly, the ALJ could properly rely upon a hypothetical question which contained those limitations. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 23.

**IV.     Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  August 6, 2007                              /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).